IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMERICAN BANK & TRUST OF      )
SOUTH DAKOTA,                 )
                             )
        Petitioner,           )
                             )
        v.                    )        1:04CV964
                             )
LISA HAGER,                   )
                             )
        Respondent.           )


<u>MEMORANDUM OPINION</u>


OSTEEN, District Judge


        Petitioner American Bank & Trust of South Dakota
("Petitioner") brought this petition seeking (1) a declaratory
judgment that all claims arising from Petitioner's loan ("loan-
related claims") to Respondent Lisa Hager ("Respondent") that she
could assert against Petitioner, its related third parties, and
its agents and all loan-related claims that Petitioner may assert
against Respondent must be arbitrated in accord with their
arbitration agreement; (2) an order directing Respondent to
arbitrate all loan-related claims against Petitioner and its
related third parties and agents individually; and (3) an
injunction barring Respondent from litigating loan-related claims
against Petitioner and its related third parties and agents in
any nonarbitral forum except a small claims tribunal that has
subject matter jurisdiction over the claim.  Petitioner seeks
this relief pursuant to the Declaratory Judgment Act, 28 U.S.C.

§ 2201, and the Federal Arbitration Act, 9 U.S.C. §§ 1 <u>et seq.</u>,
as amended ("FAA").  Respondent has moved to dismiss the action.
For the reasons stated below, the court will grant Respondent's
motion to dismiss the petition.

## I.  FACTUAL BACKGROUND

Petitioner is a South Dakota bank that, since October 2003,
has offered loans to North Carolina's consumers.  Petitioner's
marketers within North Carolina include Check into Cash of North
Carolina, Inc. ("Check into Cash").  Check into Cash and
Petitioner provide "payday loans" to consumers through a
standardized method.  A consumer writes a personal check to Check
into Cash for a certain amount, and Check into Cash then loans
the consumer an amount of money less than the check's amount.
The loan amount is less than the check amount because the check
includes the principal loan amount and a finance charge.  For
example, a customer could write a check for $354.00, but he would
receive a $300.00 loan from Check into Cash.  The remaining
$54.00 represents finance charges.  Check into Cash then holds
the check for a certain time period (until the consumer's
"payday" but no longer than two weeks) before cashing it.  Thus,
the customer gets a loan that matures when the check is cashed.
The loan of $300.00 for two weeks, thus, costs the consumer the
principal of $300.00 with finance charges of $54.00.  The finance
charges equate to a triple digit interest rate.  (Resp't's Br.
Supp. Mot. Dismiss at 4.)

The money which Check into Cash loans comes from Petitioner. Petitioner must also approve the loan, and according to Check into Cash's disclosure documents, "Check into Cash is not affiliated with [Petitioner] . . . and does not grant or deny credit." (Id. at 4-5.) Thus, Check into Cash does the paper work and marketing for Petitioner, while Petitioner ultimately approves the loan and supplies the money. Important to this litigation, the loan agreement also includes an arbitration clause. In that clause, a consumer agrees with Petitioner that any loan-related disputes between the consumer and Petitioner, its related third parties, and its agents must go through arbitration in a non-class-action setting.

Respondent suggests the purpose of Petitioner's business relationship with Check into Cash is to avoid North Carolina's banking regulations. South Dakota, where Petitioner is based, permits these payday loans, but North Carolina, where the consumers are, barred this payday-lending scheme during 2001. (See Pet. Declaratory J. Ex. B at 10.) Petitioner, because it operates in South Dakota, is not subject to North Carolina's anti-payday-lending law. Petitioner, working through Check into Cash, services North Carolina's consumers while avoiding the anti-payday-lending law. In their arrangement, Petitioner and Check into Cash assume Check into Cash is not subject to North Carolina's anti-payday-lending laws. Respondent is challenging this assumption in a separate, state-based action against Check into Cash.

Respondent, along with Ira Hall and on behalf of themselves and all other similarly situated persons, filed suit in North Carolina state court against only Check into Cash. They sought (1) a declaration that Check into Cash was conducting business in violation of North Carolina law (under a theory that it is subject to the state's anti-payday-lending laws); (2) an injunction barring Check into Cash from continuing its unlawful operations; and (3) money damages. Respondent also sought class-action certification on behalf of those who received payday loans on or after North Carolina barred payday loans. On December 30, 2005, the state court denied Respondent's class action certification motion and granted a motion to compel arbitration in that case. The state court made that ruling based on Respondent's arbitration agreement with Petitioner, North Carolina law, and the FAA. Respondent has appealed that ruling.

On October 19, 2004, Petitioner filed its petition for a declaratory judgment in this court. Petitioner seeks, among other orders, to have the state court litigation between Respondent and Check into Cash enjoined so that the loan-related dispute could be arbitrated. Petitioner, however, is not a party to that state court litigation, and in an October 18, 2004, letter, Respondent told Petitioner unequivocally that she was not suing Petitioner in the state court litigation and has "no present intention of asserting any claim against [Petitioner] . . . in the [state court] lawsuit, nor in any other lawsuit or

4

other proceeding, now or in the future." (Resp't's Br. Supp. Mot. Dismiss at 10.)

## II. ANALYSIS

Petitioner seeks, in essence, three declaratory judgments with an order and injunction to effectuate those declarations: (1) one declaratory judgment that its claims against Respondent must be individually arbitrated;[1] (2) a declaratory judgment that Respondent's claims against Petitioner for loan-related disputes must be arbitrated; and (3) a declaratory judgment that Respondent's claims against Petitioners's agents and related third parties must be arbitrated. Respondent seeks to dismiss the petition under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under any other applicable rules. The court considers the first and second petition for declaratory judgment together, and then the third separately.

  A.  Petition for Declaratory Judgment that Petitioner's
      Claims Against Respondent and Respondent's Claims
      Against Petitioner Must Go to Arbitration Individually

The court finds Petitioner lacks standing to request this relief. All parties seeking relief in federal court must have standing, and the lack thereof causes dismissal of the case. Standing consists of constitutional and prudential limitations. <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 11, 124 S.

---

[1] The arbitration agreement includes an exception. Matters that fall within the subject matter jurisdiction of a small claims court need not be submitted to arbitration. That exception does not apply in these facts, and thus, the opinion discusses it no further.

Ct. 2301, 2308 (2004). The overarching question, though, "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975). The one invoking federal jurisdiction must prove three elements to show he has constitutional standing: (1) injury in fact; (2) "a causal connection between the injury and the conduct complained of"; and (3) a "likely" ability of the court to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). The court finds that no injury in fact exists because Petitioner shows no actual or imminent threat of injury.

In determining injury in fact in a declaratory judgment action, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941). Since Petitioner seeks a declaration that if Respondent files suit against Petitioner or Petitioner files suit against Respondent for a loan-related dispute, those suits must go to arbitration in an individual (non-class-action) setting,[2] Petitioner seeks a

---

[2] Petitioner does not explain why it seeks a declaration that it must submit to arbitration. The court assumes its purpose is to prevent Respondent from challenging an arbitration panel's jurisdiction if Petitioner were to assert a loan-related dispute against Respondent in an arbitral forum.

6

declaration based on future injury.  Thus, the future injury must be not only "real and immediate," O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 675 (1974), but also "certainly impending," Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S. Ct. 1717, 1725 (1990).

Petitioner fails to show that the possibility of Respondent filing a non-arbitration suit against it or Respondent contesting Petitioner's arbitration action that it may file is "certainly impending."  Petitioner claims it is impending because Respondent filed suit against its agent Check into Cash.  However, the facts show Respondent has filed no suit against Petitioner, has not threatened to file such a suit, and has stated in a letter that it was not going to sue Petitioner.  Moreover, nothing shows that Respondent would contest an arbitration suit filed by Petitioner. Thus, because Petitioner bases the declaratory judgment petition on conjectural, future injury that is neither real nor certainly impending, the court must dismiss these petitions for lack of standing.

B.   Petition for Declaratory Judgment on Behalf of Petitioner's Agents and Related Third Parties

Petitioner next seeks a declaration that Respondent's loan-related disputes against its agents and related third parties must go to arbitration individually.  By the petition's text, Petitioner seeks this declaration to apply to future litigation and ongoing litigation.  As for future litigation against its agents and related third parties, Petitioner fails to establish standing for the reasons discussed above.  No likelihood of

7

certain future injury is present because no facts show Respondent would file a future lawsuit in a nonarbitral forum. The fact Respondent filed one state court lawsuit against a related third party or agent without going to arbitration does not, by itself, show a likelihood of future harm; no facts suggest future litigation is a real threat.

As to ongoing litigation, the court will also dismiss the action. Arguably, given the state court's December 30, 2005, ruling, the issue of ordering Respondent's present state court litigation to arbitration is now moot. Thus, if moot, the court must dismiss the claim. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S. Ct. 373, 374-75 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."). However, Respondent's appeal of that matter has avoided the mootness issue because such appeal does not "make[] it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 449 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S. Ct. 132, 133 (1895)). A reasonable possibility exists that the state court of appeals could overturn the state trial court, reviving the claim in full. Thus, "a controversy between the parties," Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 43, 65 S. Ct. 11, 14 (1944), still exists as to the arbitration clause, and the claim is not yet moot.

8

This court, however, is without power to decide the matter. Federal courts are not appeals courts for state court rulings, and they lack subject matter jurisdiction for such claims under the _Rooker_-_Feldman_ doctrine. _See_ _District of Columbia Court of Appeals v. Feldman_, 460 U.S. 462, 103 S. Ct. 1303 (1983); _Rooker v. Fidelity Trust Co._, 263 U.S. 413, 44 S. Ct. 149 (1923).[3]  The Supreme Court is the forum to decide the propriety of state court decisions, when it has such appellate jurisdiction. _Feldman_, 460 U.S. at 476, 103 S. Ct. at 1311-12.  The doctrine applies to any state court ruling, whether trial or appellate, and applies during a pending state court appeal. _See_ _Friedman's, Inc. v. Dunlap_, 290 F.3d 191, 196 (4th Cir. 2002).  Moreover, "[a]lthough the _Rooker_-_Feldman_ doctrine was not discussed by the parties, it too is a jurisdictional doctrine that may be raised by the court _sua_ _sponte_." _Id._ at 195.

Deciding whether _Rooker_-_Feldman_ controls a case "'requires determining exactly what the state court held' to ascertain whether granting the requested federal relief would either void the state court's judgment or effectively amount to a reversal of its holding." _Lemonds v. St. Louis County_, 222 F.3d 488, 493 (8th Cir. 2000) (quoting _Charchenko v. City of Stillwater_, 47 F.3d 981, 983 (8th Cir. 1995)).  Thus, "arguments [that] do no more than restate the claim for relief that was rejected on the merits by the state court" are barred under the doctrine. _Id._ at

---

[3]Federal habeas reviews are a congressionally created exception. _See_ 28 U.S.C. § 2254(a).

494.  Moreover, the doctrine can bar claims by parties not present in the state court litigation.  Id. at 495 ("Rooker-Feldman . . . is concerned with federalism[,] and . . . courts are simply without authority to review most state court judgments—regardless of who might request them to do so."); Republic of Paraguay v. Allen, 949 F. Supp. 1269, 1273 (E.D. Va. 1996) ("[A federal] [c]ourt has no authority to disturb a state court ruling regardless of the procedural posture of the litigants.  That power rests solely with the Supreme Court . . . .").

A court must dismiss under the Rooker-Feldman doctrine when a party seeks a ruling on the same issue and relief that a state court has decided.  See Friedman's, 290 F.3d at 197.  In Friedman's, a party sought a federal order to compel arbitration for an ongoing state court action.  During the federal action's pendency, the state court ordered the claim at issue into arbitration, a ruling that the adversary party appealed.  Id. at 194.  The Fourth Circuit questioned whether, given the state court's ruling, the federal action could continue.  The party seeking arbitration argued that its federal case should continue, and a federal court could still order arbitration if the state appellate courts overturned the state trial court's decision. "In other words, [the party] . . . hedg[ed] its bets:  it want[ed] a federal order compelling arbitration at the ready in case the [state court of appeals] . . . decide[d] that [the]

claims [we]re not subject to arbitration and reverse[d] the decision of the lower state court." Id. at 195.

The Fourth Circuit held the Rooker-Feldman doctrine barred the federal court action because the federal claim became, during its pendency, an action that sought a ruling on the same issue and relief that the state court had already adjudicated. Id. at 197. The court reasoned that, since the federal action sought the same relief on the same grounds that a state court had awarded, the federal court became, in effect, an impermissible appellate court for the state decision—review that Rooker-Feldman squarely forbids. See id. at 196-97.

In these facts, the state trial court has decided to deny class action certification and grant "defendant's motion to stay the[] [state] proceedings and compel arbitration." "[Furthermore, the state court stayed] [t]he proceedings in this matter . . . pending judicial approval of a final and binding arbitral decision." (Resp't's Notice Subsequent Case History Ex. 1 at 15.) The state court made this ruling because it found that Respondent's loan agreement with Petitioner, with its arbitration agreement with waiver of class action, controlled the matter.

In its petition to this court, Petitioner sought a declaration and order directing Respondent's pending state court claims against Check into Cash to go to arbitration on an individual basis. Both the state action and this action, thus, involve a ruling on whether the present dispute between Respondent and Check into Cash must go to arbitration, based on

11

the FAA, on an individual basis pursuant to Respondent's loan agreement. Because the state court sent the action to arbitration, under both North Carolina and federal law, and denied class action certification pursuant to the loan agreement, this court would reassess the North Carolina ruling if it ruled on Petitioner's claims. Such a ruling is essentially an appeal of the state court decision to a federal court. Thus, <u>Rooker-Feldman</u> bars this claim and its relief, and this court must dismiss it. <u>See</u> <u>Friedman's</u>, 290 F.3d at 197.

## III. CONCLUSION

For the reasons stated above, the court will grant Respondent's Motion to Dismiss and dismiss Petitioner's Petition for Declaratory Judgment, Order Directing Arbitration, and Injunctive Relief.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 16th day of February 2006.

United States District Judge

12